RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0096p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DANIEL B. NORFLEET,

*Plaintiff-Appellee*,

*v.*

No. 18-6026

HEATHER RENNER,

*Defendant*,

JUDY FARRIS, in her official and individual capacity,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cv-01232—Waverly D. Crenshaw, Jr., District Judge.

Argued: May 2, 2019

Decided and Filed: May 20, 2019

Before: MOORE, SUTTON, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robyn Beale Williams, FARRAR & BATES, L.L.P., Nashville, Tennessee, for Appellant. Olin J. Baker, BAKER LAW GROUP, Charlotte, Tennessee, for Appellee. **ON BRIEF:** Robyn Beale Williams, Cassandra M. Crane, FARRAR & BATES, L.L.P., Nashville, Tennessee, for Appellant. Olin J. Baker, Neil E. Barnes, BAKER LAW GROUP, Charlotte, Tennessee, for Appellee.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.  Judy Farris is a Tennessee judicial commissioner.  She issued a warrant for Daniel Norfleet's arrest based on an affidavit from his probation officer saying that he had violated his probation.  Norfleet went to jail for several months.  A state court judge dismissed the warrant on the ground that Tennessee commissioners lack authority to issue such warrants.  Norfleet sued Farris under § 1983, alleging that she violated his Fourth Amendment rights by issuing a defective arrest warrant.  Farris moved for judgment on the pleadings, arguing that judicial immunity shielded her from the lawsuit.  The district court denied the motion.  We reverse.

I.

In January 2015, the Houston County Circuit Court in Tennessee placed Norfleet on supervised probation for a six-year term.  With probation came restrictions, including that Norfleet "not behave in a manner that poses a threat to others or [him]self."  R. 1-2 at 1.

Norfleet's probation officer Heather Renner thought Norfleet violated that condition in September 2016.  She prepared an affidavit to that effect and presented it to Farris, the judicial commissioner for Houston County.  Farris issued a warrant for Norfleet's arrest.  Police officers arrested Norfleet and took him to the Houston County jail.  There he stayed until February 7, 2017, when a trial judge from the Houston County Circuit Court dismissed the warrant on the ground that the commissioner lacked authority to issue it.

Norfleet sued Renner, Farris, the arresting officers, and several municipal defendants, alleging that they violated his Fourth (and Fourteenth) Amendment right to be free from an unreasonable seizure because Farris had no power to issue the probation-revocation arrest warrant and because the affidavit did not establish probable cause and resulted in a facially deficient warrant.  Farris moved for judgment on the pleadings, claiming judicial immunity.  The district court denied the motion, finding that Farris had no authority to issue an arrest warrant for

a probation violation and that Renner's affidavit clearly failed to establish probable cause to support the warrant Farris signed.

## II.

Judges generally speaking have broad immunity from being sued. *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1871). The immunity is not limited to judges alone. It protects in equal measure officers who perform judicial duties, such as officers who issue arrest warrants. *See Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988) (per curiam). Judicial immunity does not extend to everything a judge (or affiliated officer) does. Judges lack immunity for liability arising from non-judicial actions, say driving to and from work. *Mireles*, 502 U.S. at 11–12. And they lose immunity when they act "in the complete absence of all jurisdiction." *Id.* at 12; *see King v. Love*, 766 F.2d 962, 966 (6th Cir. 1985) (applying the same rule to officials in limited-jurisdiction positions).

The line between the category of actions that protects Farris (acting in excess of jurisdiction) and the category that does not (acting in the complete absence of jurisdiction) is not self-revealing. Two illustrations come to mind. If a judge with general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction and thus be immune from a § 1983 lawsuit challenging his decision. *Bradley*, 80 U.S. at 352; *see Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978). But if a probate judge assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he is "invested only with authority over wills and the settlement of estates of deceased persons." *Bradley*, 80 U.S. at 352; *see Stump*, 435 U.S. at 357 n.7.

These examples still leave plenty of room for debate. Happily for us, the inquiry comes with a presumption. Keeping in mind that jurisdictional questions can be among "the most difficult" judges must answer, *Bradley*, 80 U.S. at 352, and keeping in mind that, without this deeply rooted immunity, judges might lose the courage of their convictions in construing jurisdictional statutes, *id.* at 346–48, we err on the side of granting immunity in close cases, *Stump*, 435 U.S. at 356.

The question, then, is not whether judges overstep their authority; it is whether they do so clearly.  That's why one could not say that all federal judges, trial or appellate, who have failed to appreciate the emerging line between claim-processing rules and subject matter jurisdiction limitations, a common mistake over the last two decades, were ineligible for judicial immunity for their actions.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–16 (2006); *Gunter v. Bemis Co.*, 906 F.3d 484, 492–93 (6th Cir. 2018).

Two other case examples add a few more contours to the inquiry.  In *Stump*, the U.S. Supreme Court held that a judge on an Indiana court with general jurisdiction was immune from suit for granting a petition for a young woman to be sterilized.  435 U.S. at 364.  Even though state law provided a sterilization scheme that did not specifically give the judge the power to approve the procedure and even though his decision may have offended fundamental rights, he could not be sued because no law or case limited his broad authority to consider such petitions.  *Id.* at 357–59.  In a more recent case, we held that a probate judge was immune from suit for initiating criminal proceedings against an individual.  *Brookings v. Clunk*, 389 F.3d 614, 623 (6th Cir. 2004).  The judge had authority to issue marriage licenses.  And the man lied on his license application, a crime.  In view of the judge's duty to "report potentially obstructive conduct," we said that the judge at worst acted in excess of his jurisdiction when he filed the criminal complaint rather than writing a letter to the prosecutor.  *Id.*

That wind up leaves us with two questions to answer:  Did Farris perform a judicial act?  If so, did she clearly lack authority to perform that act?

Farris clears the first immunity hurdle.  Issuing an arrest warrant is a judicial act.  *See Foster*, 864 F.2d at 417–18.  The district court and the parties (and we) agree.

She clears the second one too.  Nothing clearly deprived Farris of subject matter jurisdiction to issue Norfleet's probation-revocation warrant.

Tennessee statutes describe the authority of judicial commissioners and the process for revoking parole.  Begin with commissioners.  The legislatures in counties with certain populations, including Houston County, may appoint judicial commissioners.  Tenn. Code Ann. § 40-1-111(a).  Commissioners' duties "include," but are "not . . . limited to," issuing search

warrants and felony arrest warrants, appointing attorneys for indigent defendants, and issuing injunctions in domestic violence cases. *Id.* § 40-1-111(a)(1)(A). In addition to that non-exhaustive list, the state code gives commissioners power to perform tasks assigned to magistrates, *id.* § 40-1-106, such as issuing arrest warrants for anyone charged with a "public offense[]," *id.* § 40-6-202.

Tennessee law also addresses probation. It gives a "trial judge" authority to include a period of probation in the sentence, *id.* § 40-35-303, and "to revoke and annul" probation, *id.* § 40-35-310(a). The first step in the revocation process, the one at issue here, is to take the probationer back into custody. "[T]he trial judge," the statute says, "shall have the power to cause to be issued under the trial judge's hand a warrant for the arrest of the defendant as in any other criminal case," when he becomes aware that the probationer has violated state law or a condition of probation. *Id.* § 40-35-311(a).

These statutes do not clearly remove a commissioner's power to issue a probation-revocation arrest warrant. The first statute, the one laying out a judicial commissioner's powers and duties, is not exhaustive. *Id.* § 40-1-111(a)(1)(A). And elsewhere Tennessee law generally gives the commissioner authority to issue arrest warrants for criminal offenses. *Id.* § 40-6-202.

The second statute, the one describing a trial judge's powers, is not exclusive with respect to probation. It does not say that *only* trial judges may issue probation-revocation arrest warrants. That provision also could reasonably be read to treat revocation warrants like warrants in "any other criminal case." *Id.* § 40-35-311(a). All in all, a broad warrant-issuing authority with an open-ended list of duties combined with a non-exclusive revocation-warrant provision means the statutory scheme doesn't plainly deprive Farris of jurisdiction. That makes her eligible for judicial immunity.

Hoping to fend off that conclusion, Norfleet places most of his chips on the limited nature of a judicial commissioner's authority. *See State v. Bush*, 626 S.W.2d 470, 473 (Tenn. Crim. App. 1981); *see also* Tenn. Code Ann. § 40-1-111(a)(1)(A). To have immunity as a limited-jurisdiction judicial commissioner, he explains, a statute must specifically grant Farris the authority she exercised. But we rejected that argument long ago, holding that the same rule

applies to all officials, whether in positions of general or limited jurisdiction. To be liable, the official must "act in the clear absence of all jurisdiction" either way. *King*, 766 F.2d at 966.

Even under *King*, Norfleet points out, the probation-revocation statute still counts as a clear limit on a commissioner's power because it mentions only trial judges. But, as just shown, each of the pertinent grants of power is not exclusive or exhaustive. Between her non-exhaustive duties, her general criminal arrest warrant authority, and the probation statute's analogy to general criminal cases, there is a non-trivial argument that Farris had jurisdiction. So she acted at most in excess of jurisdiction but not obviously without it.

No case to our knowledge definitively answers the question one way or the other. The Tennessee Supreme Court, best we can tell, hasn't commented on a commissioner's authority to issue probation-violation arrest warrants. While the intermediate Tennessee courts have discussed probation revocation more generally, they have not dealt with magistrates or commissioners who issued probation-revocation arrest warrants. The language in two opinions, one of them unpublished and the other written before Tennessee enacted the judicial commissioner statute, may suggest the power to issue probation warrants applies only to trial judges. *See Jackson v. Metro. Gov't of Nashville*, No. M2009-01970-COA-R3-CV, 2010 WL 2287639, at *3 (Tenn. Ct. App. June 7, 2010); *Practy v. State*, 525 S.W.2d 677, 681 (Tenn. Crim. App. 1974). But in neither case did that language amount to a holding. One of them involved a probation officer's alleged negligence for failing to retract a probation-revocation warrant where the probationer cured his violation prior to being arrested. *Jackson*, 2010 WL 2287639, at *1. The other involved a probationer's argument that he did not receive a hearing prior to having his probation revoked in violation of due process. *Practy*, 525 S.W.2d at 679–82.

Norfleet adds that a Tennessee Attorney General opinion supports his position. True enough, the opinion advises that magistrates may not issue probation-revocation arrest warrants and says that trial judges have that authority. Op. Tenn. Att'y Gen. 04-054 (2004). But the opinion is not binding in Tennessee. State courts remain the authoritative interpreters of state law. *State v. Frazier*, 558 S.W.3d 145, 154 (Tenn. 2018) (disagreeing with two federal district courts and a Tennessee Attorney General opinion in construing state law). The reality that someone asked for an opinion from the Attorney General about the point, moreover, suggests

that the statutory text does not definitively answer the question. Even if we or the Tennessee courts might not ultimately adopt her view of the law (we need not decide today), Farris didn't clearly lack jurisdiction to issue the warrant. She is entitled to absolute immunity.

For these reasons, we reverse and remand the case to the district court to enter judgment for Farris.